IN RE DISQUALIFICATION OF BREAUX.

WILLIAMS *v.* KISLING, NESTICO & REDICK, L.L.C.

2017-Ohio-7374.]

(No. 17–AP–041—Decided June 21, 2017.)

O'CONNOR, C.J.

{¶ 1} Subodh Chandra has filed an affidavit and two supplemental affidavits with the clerk of this court under R.C. 2701.03 seeking to disqualify Judge Alison Breaux from presiding over any further proceedings in the above-referenced case in the Summit County Court of Common Pleas.

{¶ 2} Mr. Chandra represents the plaintiff in a civil case against Kisling, Nestico & Redick, L.L.C. ("KNR"), and its managing partner, Rob Nestico. Although originally filed in Cuyahoga County, the case was transferred to the docket of former Summit County Court of Common Pleas Judge Todd McKenney in September 2016. Judge Breaux defeated Judge McKenney in the November 2016 general election, and she assumed this case in January 2017.

{¶ 3} Citing *Caperton v. A.T. Massey Coal Co. Inc.*, 556 U.S. 868, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009), Mr. Chandra asserts that due process requires Judge Breaux's disqualification based on KNR's contribution to her campaign for judicial office. Mr. Chandra also claims that the judge's political and personal connections to KNR and Mr. Nestico—combined with a series of allegedly lawless decisions—have created an appearance of impropriety warranting her removal. Judge Breaux has responded in writing to Mr. Chandra's affidavits, denying any bias in favor of the defendants.

{¶ 4} Upon review of the filings, no basis has been established to order the disqualification of Judge Breaux.

### Caperton v. A.T. Massey Coal Co.

{¶ 5} In *Caperton*, the United States Supreme Court held that due process requires a judge's recusal "when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent." 556 U.S. at 884, 129 S.Ct. 2252, 173 L.Ed.2d 1208. Under this test, the court held that a state supreme-court justice was required to recuse himself from a case involving a corporate litigant whose chief executive officer had contributed $3 million to the justice's campaign for office. *Id.* at 873. The executive's contributions were more than the total amount spent by the justice's other supporters and three times the amount spent by the justice's own campaign committee. "On these extreme facts the probability of actual bias [rose] to an unconstitutional level." *Id.* at 886-887.

{¶ 6} Mr. Chandra argues that *Caperton* similarly requires Judge Breaux's disqualification from the underlying case. Her campaign-finance reports indicate that during the 2016 election cycle, KNR donated advertising space on a billboard truck to the judge's campaign committee. The committee valued KNR's in-kind contribution at $3,600, which Mr. Chandra notes was the maximum amount that an organization could contribute to a judicial candidate. According to Mr. Chandra, because Judge Breaux's campaign received only $32,930 in outside contributions, KNR's reported $3,600 contribution amounted to approximately 11 percent of the judge's total outside contributions. Mr. Chandra further believes that Judge Breaux "massively undervalued" the fair market value of the billboard space and that she should have valued it much higher, at $24,000 or more. If Judge Breaux had accurately valued the billboard, Mr. Chandra argues, KNR's contribution would have amounted to 56 percent of her total contributions. Mr. Chandra concludes that under either scenario, KNR's "extraordinary" contribution requires Judge Breaux's removal under *Caperton*.

{¶ 7} In response, Judge Breaux states that her campaign took in approximately $93,000 and therefore KNR's contribution was neither 11 percent nor 56 percent of her total contributions. She characterizes Mr. Chandra's assertions about the true cost of the billboard space as "false," and she refers to an affidavit from James E. Schooling, a representative of the company that leased billboard trucks to KNR during the 2016 election cycle. Mr. Schooling averred that the total cost/value of Judge Breaux's advertising space was $2,561. (Incidentally, Mr. Schooling also averred that KNR used billboard trucks to advertise for ten different candidates during the 2016 election, including Judge Breaux's opponent.)

{¶ 8} An affidavit of disqualification is not the appropriate forum to determine the correct value of an in-kind campaign contribution—especially considering the conflicting evidence in the record here. Therefore, at this point, it must be assumed that Judge Breaux accurately reported the value of KNR's donation of advertising space. As the court explained in *Caperton*, "[n]ot every campaign contribution by a litigant or attorney creates a probability of bias that requires a judge's recusal." 556 U.S. at 884, 129 S.Ct. 2252, 173 L.Ed.2d 1208. And based on this record, it is not reasonable to conclude that KNR's contribution of the billboard space had "a significant and disproportionate influence" in placing Judge Breaux on the underlying matter. Indeed, it is difficult to see how a litigant's donating advertising space on a single shared billboard truck—regardless of the true fair market value—could result in a "significant and disproportionate influence" on a county-wide judicial election. At bottom, the circumstances here are distinguishable from the "extreme" facts in *Caperton*, and therefore KNR's in-kind contribution did not create a serious probability of actual bias rising to an unconstitutional level.

### The appearance of impropriety

{¶ 9} As *Caperton* recognized, the Due Process Clause demarks only the outer boundaries of judicial disqualification, and states may impose more rigorous standards. *Id.* at 889-890. In Ohio, for example, the chief justice may disqualify a judge for bias or to avoid an appearance of bias. *See* Ohio Constitution, Article IV, Section 5(C); R.C. 2701.03; *In re Disqualification of Lewis*, 117 Ohio St.3d 1227, 2004-Ohio-7359, 884 N.E.2d 1082, ¶ 8 (defining the test for determining whether a judge's participation in a case presents an appearance of impropriety). Mr. Chandra asserts that Judge Breaux's political and personal connections to the defendants, combined with erroneous legal decisions in the defendants' favor, have created an appearance of impropriety. But for the following reasons, Mr. Chandra has not established that an objective observer would reasonably question Judge Breaux's impartiality in this case.

{¶ 10} First, under longstanding Ohio precedent and the Code of Judicial Conduct, it is not reasonable to question a judge's impartiality based solely upon counsel's or a litigant's contribution to the judge's election campaign. *See In re Disqualification of Cleary*, 77 Ohio St.3d 1246, 674 N.E.2d 357 (1996) ("the fact that a party or lawyer in a pending case campaigned for or against the judge is not grounds for disqualification"); *In re Disqualification of Burnside*, 113 Ohio St.3d 1211, 2006-Ohio-7223, 863 N.E.2d 617 (large contributions by law-firm defendant did not call into doubt judge's ability to preside fairly and impartially); Jud.Cond.R. 2.11, Comment 1 ("A judge's knowledge that a lawyer, law firm, or litigant in a proceeding contributed to the judge's election campaign within the limits set forth in [Jud.Cond.R.] 4.4(J) and (K) * * * does not, in and of itself, disqualify the judge"). Certainly, there are circumstances in which counsel's or a litigant's participation in a judge's campaign *may* require judicial disqualification. *See, e.g.,* Board of Professional Conduct Advisory Opinion 2014-1 (Jan. 31, 2014). The ability of a judge to serve fairly and impartially in these situations is determined on a case-by-case basis. *In re Disqualification of Celebrezze*, 74 Ohio St.3d 1231, 1232, 657 N.E.2d 1341 (1991). KNR's contribution alone, however, does not create any inference of an appearance of impropriety.

{¶ 11} Second, Mr. Chandra's various allegations regarding personal connections between Judge Breaux, Judge Joy Malek Oldfield, and the defendants similarly do not support an appearance of impropriety. For example, Mr. Chandra avers that because Judge Breaux campaigned with Judge Oldfield, any Nestico-affiliated contributions directed to Judge Oldfield should also be considered contributions to Judge Breaux. In response, Judge Breaux acknowledged that she and Judge Oldfield campaigned together, but she further states that their committees split expenses for all joint events and that all monetary contributions were made to each campaign individually. Mr. Chandra's arguments

here are too speculative, and "[a]llegations that are based solely on hearsay, innuendo, and speculation—such as those alleged here—are insufficient to establish bias or prejudice." *In re Disqualification of Flanagan*, 127 Ohio St.3d 1236, 2009-Ohio-7199, 937 N.E.2d 1023, ¶ 4.

{¶ 12} Third, "affidavits of disqualification cannot be used to remove a judge from a case simply because a party is particularly unhappy about a court ruling or a series of rulings." *In re Disqualification of D'Apolito*, 139 Ohio St.3d 1230, 2014-Ohio-2153, 11 N.E.3d 279, ¶ 5. Accordingly, the fact that Mr. Chandra disagrees with Judge Breaux's recent decisions, especially her "gag order," is not evidence of bias. It is not the role of the chief justice in deciding an affidavit of disqualification to review the correctness of a trial judge's decisions—especially before the court of appeals has had an opportunity to rule on the legal issues. Without more, the record does not establish that Judge Breaux's recent legal decisions were the product of bias or favoritism toward the defendants based on KNR's contribution to her campaign.

{¶ 13} For the reasons explained above, the affidavit of disqualification is denied. The case may proceed before Judge Breaux.